IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2015 Session


**CHURCH OF GOD IN CHRIST, INC., ET AL. v. L M HALEY
MINISTRIES, INC., ET AL.**


**Appeal from the Chancery Court for Fayette County
No. 15815     Martha Brasfield, Chancellor**

_____


**No. W2015-00509-COA-R3-CV – Filed January 27, 2016**
_____



ARNOLD B. GOLDIN, J., Dissenting.


In light of the facts that are presented by the pleadings in this case, I must respectfully dissent from the majority's decision to affirm the trial court's dismissal of this property dispute. The majority opinion places much emphasis on the fact that the local church has not "withdrawn" from COGIC, and by citing to *Church of God in Christ, Inc. v. Middle City Church of God in Christ*, 774 S.W.2d 950 (Tenn. Ct. App. 1989), it suggests that judicial intervention would be improper at this time. Although the Appellees, an apparently vocal group within the local church, still claim that they want to remain a part of COGIC, they refuse to abide by the decisions of the hierarchal church's Ecclesiastical Council,[1] thereby creating, if not an actual withdrawal from the hierarchal church, a schism between the members of the local church. The ecclesiastical decisions having, therefore, been made by the hierarchal church, I am of the opinion that the alleged facts of this case do not prevent judicial intervention to decide the property issues that have arisen between the hierarchal church and members of the local church. From my perspective, they necessitate it. Because resolution of the dispute among the parties is not dependent on the trial court's ruling on matters of conscience or religious doctrine or polity, the trial court should not be precluded from exercising jurisdiction over the case.

---

[1] According to an affidavit from Uleses C. Henderson, Jr., General Counsel for COGIC, the ecclesiastical questions decided by the Council were never appealed and are therefore binding on the local church according to the COGIC Constitution.

We are fortunate to live in a nation where religious liberty exists. As the United States Supreme Court once stated:

> In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect.

*Watson v. Jones*, 80 U.S. 679, 728 (1871). Neither this Court, nor any other governmental court, has ecclesiastical jurisdiction. *Nance v. Busby*, 18 S.W. 874, 879 (Tenn. 1892). We are forbidden from adjudicating disputes that turn on church policy and "must refrain from reviewing or interfering with decisions made by a religious body on matters of church discipline, faith, or practice." *Convention of Protestant Episcopal Church in Diocese of Tenn. v. Rector, Wardens, & Vestrymen of St. Andrew's Parish*, No. M2010-01474-COA-R3-CV, 2012 WL 1454846, at \*6 (Tenn. Ct. App. Apr. 25, 2012) (citations omitted). As such, "[w]henever 'questions of discipline, or of faith, or ecclesiastical rule, or custom, or law have been decided by the highest of . . . church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them.'" *Id.* (quoting *Watson*, 80 U.S. at 727).

The mere fact that a dispute arises within a religious body, however, does not mean that any issues stemming from that dispute are outside the cognizance of civil courts. "It is of course true that the State has a legitimate interest in resolving property disputes, and that a civil court is a proper forum for that resolution." *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 445 (1969). Thus, although the Constitution "severely circumscribes the role that civil courts may play in resolving church property disputes," "not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment." *Id.* at 449. Courts may adjudicate property disputes so long as they do not undertake efforts to decide for themselves matters that properly belong to the ecclesiastical body.

"Tennessee has long used the neutral principles approach in determining disputes over ownership of church property, where examination into church doctrine or practice is not required." *Convention of Protestant Episcopal Church in Diocese of Tenn.*, 2012 WL 1454846, at \* 9. As discussed by our nation's Supreme Court:

> [This] method relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges. It thereby promises to free civil courts completely from entanglement in questions of religious doctrine, polity, and practice. Furthermore, the neutral-principles analysis shares the peculiar genius of private-law systems in general—flexibility in

ordering private rights and obligations to reflect the intentions of the parties. Through appropriate reversionary clauses and trust provisions, religious societies can specify what is to happen to church property in the event of a particular contingency, or what religious body will determine the ownership in the event of a schism or doctrinal controversy. In this manner, a religious organization can ensure that a dispute over the ownership of church property will be resolved in accord with the desires of the members.

*Jones v. Wolf*, 443 U.S. 595, 603-04 (1979). Application of a neutral principles approach does not preclude the consideration of religious documents. Indeed, the "United States Supreme Court has . . . recognized that the neutral principles approach can involve examination of religious documents such as a church constitution, specifically looking for language of a trust in favor of the central church." *Convention of Protestant Episcopal Church in Diocese of Tenn.*, 2012 WL 1454846, at *19 (citations omitted). In this state, past courts have attempted to resolve church property disputes by examining items such as deeds, church charters, and church governing documents. *See id.* at *20 (approving trial court's consideration of a warranty deed, church's "Articles of Association," church's "Articles of Incorporation," and "the Constitution and Canons of the Episcopal Church and the Diocese"); *Emmanuel Churches of Christ v. Foster*, No. M2000-00812-COA-R3-CV, 2001 WL 327910, at *3 (Tenn. Ct. App. Apr. 5, 2001) (approving examination of a deed to determine grantor's intent); *Cumberland Presbyterian Church v. N. Red Bank Cumberland Presbyterian Church*, 430 S.W.2d 879, 881 (Tenn. Ct. App. 1968) (examining "Cumberland Presbyterian Digest"). Resorting to such evidence does not represent unwarranted judicial encroachment, nor does it require courts to rule on matters of conscience or religious polity. It merely enables courts to resolve matters, i.e., property rights, which are properly within their subject matter jurisdiction.

Here, the trial court is not incapable of resolving the property dispute that exists. Contrary to the conclusions that the trial court reached in its order of dismissal, it has subject matter jurisdiction to address the concerns that are presented. As Appellants have urged, it can seek to adjudicate property rights by referring to documents such as COGIC's Official Manual and Constitution ("*The Official Manual*").[2] Although the underlying tensions among

---

[2] In relevant part, we note that one section of *The Official Manual* apparently states as follows: "Trustees of local unincorporated churches and their successors in office shall hold title to all real and personal property, for the use and benefit of the members of Church of God in Christ[.]" Although *The Official Manual* is incorporated by reference into the Second Amended Complaint, its full text is not contained within the record transmitted on appeal. Certain excerpts, including the one referenced in conjunction with this footnote, are interspersed throughout the record. The excerpt just referred to was included in a memorandum filed by L.M. Haley Ministries, Inc. and Lonnie M. Haley, III, on August 31, 2012.

the parties may be ecclesiastical in nature, such tensions, as alleged, have engendered a genuine property dispute. By applying a neutral principles approach, the trial court can resolve the dispute without impermissibly deciding matters of religious doctrine.

Although the majority concludes that judicial intervention is improper at this time because the local church has not withdrawn from COGIC, I cannot join in its holding. I do not disagree that the past cases involving a judicial determination of church property rights between a connectional church and hierarchical church have been occasioned by a withdrawal or disassociation of a local church from a hierarchical church body. As the *Middle City* court explained, "[t]here is no need for a judicial determination of property rights where the local church has not withdrawn from the connectional system and there are no genuine property disputes." *Middle City Church of God in Christ*, 774 S.W.2d at 953. However, given the circumstances of this case, I cannot join in the majority's decision to affirm judicial abstinence. Although in the typical case an impasse over property rights is created by a local congregation's decision to withdraw, the absence of a formal withdrawal by the local church in this case does not alter the realities of the situation that are alleged to be at hand. There appears to be a true impasse over rights to the property, and as such, the prohibition against judicial interference discussed in *Middle City* is not applicable. As the *Middle City* court itself acknowledged, "should there b[e] a true impasse relating to property rights, then intervention may be required." *Id.*[3]

As taken from the Second Amended Complaint, the following allegations evidence a true conflict over property rights among the parties on appeal:

14. Since its founding many years ago, GOSPEL CENTER TEMPLE CHURCH OF GOD IN CHRIST assumed the vows of membership with the

[3] In a footnote, the majority opinion appears to suggest that my focus on the "true impasse" language from *Middle City* is somehow undermined by this Court's decision in *Avondale Church of Christ v. Merrill Lynch*, No. E2007-02335-COA-R3-CV, 2008 WL 4853085 (Tenn. Ct. App. Nov. 10, 2008). Indeed, the majority states as follows: "[T]he **Avondale** Court held that the 'true impasse' language so heavily relied upon by the dissent was mere dicta." There is no denying that the *Avondale* court identified the "true impasse" language as dicta from *Middle City*, but the impression given by the majority's statement is that the *Avondale* court somehow considered this language negatively. A careful reading of the *Avondale* opinion, however, reveals that this was not the case. In reviewing a dispute within a congregationally-governed church, the *Avondale* court held that the trial court in that case had jurisdiction to determine which church faction should control church property inasmuch as respective factions within the church had reached an impasse. *Avondale Church of Christ*, 2008 WL 4853085, at *7. *Avondale's* reference to the "true impasse" language from *Middle City* was done in support of its conclusion that judicial intervention was proper. *See id.* The majority points out— and I agree—that past courts considering disputes between a connectional church and hierarchical church have affirmed judicial intervention when local churches withdrew and disassociated themselves from the hierarchical church body. Although jurisdiction certainly exists in such cases, it should also exist in cases such as this where, despite the absence of a formal withdrawal by a local congregation, there is an alleged split within the church and there are allegations that one faction has taken actions which frustrate the hierarchical body's purported interest in the church property, thereby leading to an irreconcilable impasse.

CHURCH OF GOD IN CHRIST, INC. (referred to as COGIC hereinafter), and declared it[s] willingness to submit to and abide by the government of the Church of God in Christ, Inc. As such, it has abided by the Official Manual and Constitution of COGIC and is considered "The Local Church" under the Constitution[.]

. . . .

18. Defendant LM Haley Ministries, Inc., and Gospel Center Temple Church Moscow, Inc., by and through its Directors, have unlawfully assumed control of [The Local Church's] real property and unlawfully excluded Complainant from "the Local Church". On January 2, 2012, Defendant LM Haley Ministries, Inc., by and through the other named defendants, refused to allow BISHOP HALL to enter "The Local Church" premises and had a Fayette County Sheriff's Deputy advise BISHOP HALL that he could either leave "The Local Church" property or be arrested.

. . . .

20. Parties as yet unknown to BISHOP HALL, but believed to include one or more of the named Defendants, filed a corporate charter for Gospel Center Temple Church Moscow, Inc. with the Tennessee Secretary of State on December 16, 2011. **(SEE ATTACHED EXHIBIT D).** On December 29, 2011, Defendants Barry C. Turner, Erskine J. Murphy and Milton Holt, Sr., holding themselves out to be the sole Trustees of "The Local Church", executed and recorded a Quit Claim Deed attempting to transfer [The Local Church's] real property to this new entity. **(SEE ATTACHED EXHIBIT E).** This alleged transfer was without the authority of "The Local Church" and its members and without the necessary authority of COGIC.

. . . .

22. Defendants have interfered with the lawful attempts of BISHOP HALL to manage the bank accounts of "The Local Church" such that [The Local Church's] bank, First Tennessee Bank, is unwilling to place "The Local Church" funds under his control pending Court resolution.

. . . .

27. While the Defendants have intimidated many members of "the Church", a number of members have come forward to express their desire for BISHOP

- 5 -

HALL to resolve this matter and restore "The Local Church" to its lawful leadership. These persons are the lawful members of "The Local Church".

Moreover, I note that since the Second Amended Complaint was filed, COGIC's Ecclesiastical Council rendered a decision that: (1) excommunicated two of the individual Appellees in this case; (2) ordered that the local church be reorganized under the leadership of Bishop David Hall; (3) directed that the personal property be turned over to Bishop Hall; and (4) ordered that the real property deeds be amended to reflect that the real property is held in trust for COGIC. As the majority pointed out, notwithstanding the decision of the Ecclesiastical Council, it appears that Bishop Hall has been prevented from accessing church funds or holding services at the local church to this day.

The alleged facts signal a divisive state of affairs. There may be no formal withdrawal by the local church, but judicial intervention is clearly necessary. Indeed, notwithstanding the Ecclesiastical Council's decision and the Appellees' supposed desire to remain a part of COGIC, the Appellees have continued to interfere with Bishop Hall's access to the church property. Despite pledging their allegiance to COGIC, the Appellees have refused to abide by the hierarchical church's directives. In effect, the majority's decision only indefinitely continues the true impasse that exists over property rights. Under the majority's holding, it is unclear to me what recourse exists for COGIC. The facts in the Second Amended Complaint evidence that there has been a split within the church, and despite COGIC's present attempt to ensure that the church property is used for the benefit of those who remain loyal to COGIC, the majority maintains that judicial involvement is not permitted. I find this to be an unpalatable result, especially considering the fact that two of the named Defendants/Appellees have been excommunicated from the COGIC body. Although the local church has not formally withdrawn, the allegations of the Second Amended Complaint indicate that a vocal faction of the local congregation has acted to frustrate COGIC's purported interest in the church property.

Again, although the Ecclesiastical Council ordered that the local church be reorganized under Bishop Hall's control, he has apparently been unable to hold services at the property to this day. Notwithstanding the Appellees' stated desire to remain a part of COGIC, the presented facts indicate that they have defied the hierarchical body's directives. Such defiance has not been limited to an ecclesiastical debate, but importantly, has manifested itself into a significant dispute over access to the church property. Inasmuch as the underlying religious dispute has transformed itself into a secular property dispute, which poses a significant threat to peace among the parties, I am of the opinion that the alleged facts of this case warrant judicial involvement.[4]

---

[4] Although the majority accuses this dissent of impermissibly advancing an argument not explicitly raised by the Appellants, the Appellants did generally challenge the dismissal of their case and asserted that the trial

At one point in the majority's opinion, the majority concludes that part of the Appellants' claims would require this Court "to make a determination as to the appropriate leader of Gospel Center Church." I respectfully disagree. Although we certainly lack the constitutional authority to determine such a question, as does the trial court, we also note that the ecclesiastical questions have already been decided. As we have discussed, the Ecclesiastical Council ordered that the local church should "be reorganized under the Pastoral leadership of Bishop David A. Hall, Sr." Nothing prohibits this court, or the trial court, from acknowledging the ecclesiastical issues that have been decided by the Ecclesiastical Council. Such acknowledgement, in fact, affirms the heart of the ecclesiastical abstention doctrine; ecclesiastical questions are not for the courts but are for the ecclesiastical body.

Although the majority draws a sharp line and insists that jurisdiction is dependent upon a formal disassociation between COGIC and the local church, the absence of a formal withdrawal should not militate against jurisdiction in a case such as this. As I have stressed, although the Appellees take the position that they have not withdrawn, the allegations in this case indicate that they refuse to abide by COGIC's hierarchical directives. There may be no formal withdrawal, but the Appellees' alleged actions, in effect, belie a true connection to the hierarchical church body. Under these circumstances, the acceptance of their pledge of allegiance as outcome-determinative of the trial court's jurisdiction ignores the reality of the division and impasse that exists. An adjudication of the rights of access to the property is clearly needed, and the trial court's jurisdiction is available for this purpose. Because judicial abstinence under these circumstances will only continue the impasse that exists, I would remand this case to the trial court to use neutral principles of law to determine the parties' respective property rights.

For all of the reasons stated herein, I dissent.

_____
ARNOLD B. GOLDIN, JUDGE

court had jurisdiction to adjudicate it. The Appellants' failure to specifically challenge all aspects of the trial court's reasons for dismissing the case on jurisdictional grounds should not, in my opinion, unqualifiedly prevent our ability to address those additional concerns in our review on appeal. Indeed, I am reluctant to hold that the appeal should fail simply because the Appellants' brief does not address the trial court's application of *Middle City*. The Appellants have asserted that the trial court had jurisdiction to adjudicate this property dispute, and having reviewed the record, I agree. I have not endeavored to construct an argument on the Appellants' behalf. Rather, I have reviewed this case to determine whether jurisdiction was proper in the trial court, an issue that was raised by Appellants.