The CUMBERLAND PRESBYTERIAN CHURCH, Complainant, Appellant, v. NORTH RED BANK CUMBERLAND PRESBYTERIAN CHURCH, Defendant, Appellee. — 430 S.W.(2d) 879.

Eastern Section. May 15, 1968.

Certiorari Denied by Supreme Court August 19, 1968.

Clarence Kolwyck, Chattanooga, for appellant.

Bean & Phillips, Chattanooga, for appellee.

McAMIS, P.J. This case involves the title to property conveyed to "Trustees of the North Red Bank Cumberland Presbyterian Church" by deed dated September 17, 1948.

The case turns on whether, in the absence of a controlling provision of the deed or church canon expressly forfeiting title upon withdrawal, a local congregation can withdraw from the parent organization without losing title to the local church property.

The case has previously been before this court and, upon the granting of the writ of certiorari, was heard by the Supreme Court. In an unreported decision the Supreme Court remanded the case to the Chancery Court to permit the introduction of proof of any provision of the constitution or canon law of the Cumberland Presbyterian Church bearing upon the right of a local congregation of that denomination to withdraw from the parent organization and the effect of such withdrawal upon the title to local church property. The material and controlling facts are not in dispute. Church pronouncements and rules touching the question, if any may be said to exist, however, are nebulous and far from clear. The facts may be briefly summarized.

Prior to 1948, certain members of the local Cumberland Presbyterian Church withdrew and formed the Red Bank

Mission. Later, upon petition the Chattanooga Presbytery admitted the Mission as the North Red Bank Cumberland Presbyterian Church. Property held by Trustees of the Mission was thereupon conveyed to Trustees of the North Red Bank Cumberland Presbyterian Church. Except for the reference to the Church as a Cumberland Presbyterian Church there is nothing in the deed suggesting or requiring that the property be held in trust for the use of a church of that denomination or faith.

After the organization of the Mission as a Cumberland Presbyterian Church it fully participated in the regular program and government of the Cumberland Presbyterian Church. Later, however, dissention developed between the local Church and the Chattanooga Presbytery and by congregational action it was unanimously voted to withdraw from the Cumberland Presbyterian Church and operate as an independent church. On November 29, 1961, a "Declaration of Status" was promulgated and recorded in the Register's office of Hamilton County declaring the local congregation to be an autonomous body without obligation to any parent church.

Upon being notified of this action Chattanooga Presbytery, in 1964, demanded that all church property be surrendered to the Presbytery. When this demand was refused the bill in this case was filed for a judicial determination of the question.

The answer admitted withdrawal as alleged in the bill but asserted that the title to the local church property was not affected by the withdrawal, but remained vested in the Trustees for the use and benefit of the local congregation, then known as Hays Memorial Church.

Upon the remand there was introduced by agreement the Cumberland Presbyterian Confession of Faith, 1952 minutes of the Cumberland Presbyterian General Assembly and the Cumberland Presbyterian Digest of 1957. No other proof was introduced and the case was heard by the Chancellor on the original record and the above mentioned documents.

The Chancellor, while apparently recognizing the rule of general law to be contrary, held that the announced purpose of the parent church to sell the property to a church of another faith deprived it of the right to claim the property as against the local church.

Cumberland Presbyterian Church has appealed and assigned a number of errors. In the view we take we need consider only the assignments that the Chancellor erred in not holding the withdrawal of the local congregation effected a transfer of title to the involved property to the parent church and erred in holding that, in any case, the parent's announced intention to transfer title to a church of an entirely different faith deprives it of the right to claim the property. These questions will be considered in sequence.

Before considering the first question reference should be made to the nature of the government of the Cumberland Presbyterian Church and such written evidence as exists pertaining to local church property.

As its name implies its government is of the presbyterial type. Its church courts in regular gradation are: (1) Sessions of the local church, (2) Presbyteries consisting of churches within a prescribed district, (3) the Synod, consisting of at least three Presbyteries, and (4) the General Assembly representing in one body all of the churches.

In spiritual matters the three higher courts in an ascending order exercise revisory jurisdiction on appeal over the churches, their members, officers and ministers, as well as over the organization of churches and related matters.

The Constitution, the minutes of the General Assembly and the Digest make no clear-cut pronouncement as to where the title to church property shall vest in event the local congregation withdraws. Some indication of intent is to be gleaned from the Digest p. 60 where it is said:

"In case the local congregation dissolves or ceases to exist the property still belongs beneficially in trust to the people of the faith for which the conveyance was originally made. In such a situation there may be no Trustee to preserve or protect the property. Under these circumstances it has been the impression in our denomination that the title in some way is transferred to the Presbytery in which the property is situated. As a matter of civil law this is not strictly true. While the duty and responsibility of looking after the property may properly devolve upon the Presbytery, the title does not and cannot automatically vest in the Presbytery. The Presbytery may take the necessary legal steps for the protection, transfer or sale of the property as the best interest of the denomination indicates."

We think the quoted language means that in event the local congregation dissolves or ceases to exist the property still continues in trust for the adherents of the faith and that, under the civil law (under the prevailing impression of that law within the denomination) the title to its property passes to the Presbytery; that the Presbytery then becomes charged with the duty of protecting

and preserving the property for the beneficiaries of the trust, i. e., adherents of Cumberland Presbyterian faith, and arranging for its transfer or sale. This language is to be interpreted to mean that while the Presbytery may sell the property the proceeds belong beneficially to the parent church rather than to the churches of the Presbytery.

■ We think the reference to dissolution of a local church means dissolution as a church of the Cumberland Presbyterian faith and subject to its government. We must therefore, conclude that when a local congregation unanimously agrees, as here, to withdraw from the church, in the sense of this pronouncement, the congregation has ceased to exist and there has been a dissolution of the local congregation, with the result that title to property of the local church passes to the parent organization for the advancement of the purposes of the trust.

The existence of such a trust seems clearly indicated. The membership of churches can not be expected to remain constant. Old members die or leave the church and new members are constantly being added to the rolls. Persons who contributed to the purchase of the Mission property and caused it to be transferred to the Red Bank Church as a Cumberland Presbyterian Church, as well as those who have contributed to the substantial sums going into improvements later made, had every reason to expect their donations to remain under the government of the Cumberland Presbyterian Church and be used for the advancement of its faith and doctrine. The congregation as constituted at the time of withdrawal now seeks to remove the property from the control of the Cumberland Presbyterian Church and establish a free and independent church. While they may espouse the same doctrine

and beliefs, it is difficult if not impossible to disassociate doctrine from government or determine where the one ends and the other begins. Nor can there be any assurance that without supervision and control by a higher church authority these doctrines and beliefs will continue to be held by the congregation.

The result indicated appears to be in accord with the current of authority where the denomination is of the disciplinary form of government, even where its internal law is silent as to the devolution of property titles upon dissolution of the local congregation.

In Hardin et al. v. Starnes et al., 32 Tenn. App. 66, 221 S.W.2d 824, a local Methodist Church acquired title in the name of trustees as a Methodist Church and affiliated with the Holston Conference of that Church. The deed failed to provide that the property should be held in trust for the Holston Conference. Later, dissention arose and the local congregation attempted to withdraw and take the local property with them into another church. The opinion in that case affirmed the Chancellor's holding that under Methodist discipline the local church could not withdraw and divert the property from the original purpose of the organizers of the church as a Methodist Church.

A number of cases from other jurisdictions involving the Presbyterian form of government hold that the local congregation can not withdraw from the parent church and retain title to local church property.

In Gibson v. Trustees of Pencader P. Church, 24 Del. Ch. 270, 10 A.2d 332, affirmed by the Supreme Court of Delaware in Trustees of Pencader P. Church, etc. v. Gibson, 26 Del.Ch. 375, 22 A.2d 782, 786, the minister

of the local church was expelled by the Presbytery. The congregation by unanimous vote then withdrew and announced its intention to form an independent church. The Presbytery thereupon filed suit to oust the congregation from the property and preserve it for the Presbyterian Church U. S. A.

The congregation defended on the ground that title was in the name of Trustees for the use of Pencader Church which could use the property in a denomination of its own choosing.

The Court there said:

"The congregation may secede, but they cannot take with them the church property even if their action is unanimous. Trustees of Presbytery [of Jersey City] v. Trustees of Presbyterian Church of Weekawken, 80 N.J.L. 572, 78 A. 207. And this is for the reason, as will hereafter be shown, that the church property does not belong to the congregation. In addition to a supposed official capacity not at all necessary to be examined, the complainants below sued individually as members of the Parent Church. Their interest is clear. On Demurrer the Chancellor so ruled. The correctness of the ruling is beyond dispute. Helm v. Zarecor, 222 U.S. 32, 32 S.Ct. 10, 56 L.Ed. 77; Barkley v. Hayes, D.C., 208 F. 319, on appeal, Duvall v. Synod, etc., (Shepherd et al. v. Barkley et al.), 8 Cir., 222 F. 669; Shepard v. Barkley, 247 U.S. 1, 38 S.Ct. 422, 62 L.Ed. 939; Presbytery of Huron v. Gordon, [68] S.D. [228], 300 N.W. 33 [not yet reported in State Report]."

In Presbytery of Huron v. Gordon, 68 S.D. 228, 300 N.W. 33, the Murdock Memorial Presbyterian Church attempted to withdraw from the Presbytery of Huron

and retain the local church property for its use as an autonomous church. The Supreme Court of South Dakota held that in the absence of an express trust raised by the deed to some other use the property belonged to the parent church. We quote:

"It logically follows from these conclusions that it does not rest within the power of the local congregation, even though its action be unanimous, to terminate the property of the Church.

"It also follows that the Presbytery of Huron, as a subordinate body of the Church, charged with admitted responsibilities upon its behalf in the particular territory in which Bancroft is located, has an interest in the property of the Church and may complain of its diversion from the use to which that property has been dedicated. Gibson et al. v. Trustees of Pencader Presbyterian Church in Pencader Hundred et at., [24] Del.Ch. [270], 10 A.2d 332.

"The contention that the judgment below is in derogation of the constitutional liberties of the defendants is without merit. The judgment does not restrict them in the exercise of their sacred constitutional rights. They remain free to follow the dictates of conscience and to associate themselves in any faith or form of worship they may choose. In changing their adherence from the Church we have identified, however, they may not take its property with them, even though their bounty may have contributed to its purchase. Barkley v. Hayes, supra."

Under like circumstances the Supreme Court of North Dakota in Presbytery of Bismarck v. Allen, 74 N.D. 400, 22 N.W.2d 625, said:

"Where real property is conveyed to a local religious association or corporation, which local society is a subordinate member of a general church organization, with superior ecclesiastical tribunals with ultimate power in some supreme judicatory, and the conveyance contains no special trust, then the property is not owned by the local congregation or the individuals thereof, but is held in trust for the general church * * * judicatory. The court will give assistance to a proper church judicatory which seeks the use and control of church property where the local society has separated itself from the general church organization, denies the authority of the duly constituted tribunals of the mother church and joins itself to another unfriendly organization."

And see Duvall v. Synod of Kansas of Presbyterian Church, 8 Cir., 222 F. 669, also Barkley v. Hayes, D.C., 208 F. 319, where the syllabus states:

"A member of the Presbyterian Church or of the Cumberland Presbyterian Church, under their form of organization, has no individual ownership in any property of the church which has been purchased or conveyed for the general use of a congregation or for general use for religious purposes, nor has the congregation which uses it, but the same is vested in the general church, which through its general assembly has the ultimate power of control, although the conveyance may have been made to the trustees of the particular congregation."

The argument followed by the Chancellor is that even if otherwise entitled to prevail, the parent church in this case should be repelled because of its announced intention to sell the property to another denomination. The argument is that in so diverting the property com-

plainant convicts itself of doing what it condemns the local church for attempting to do. We consider the argument a fallacy.

In our opinion a sale of the property is not per se a deviation from the purposes for which it was acquired by the deed from the Mission. It is easy to imagine a situation where a conversion of the property into cash to be used for carrying on the work of the Cumberland Presbyterian Church would best promote its faith and doctrine. The law will not require complainant to hold the property in its present form even though not needed in its present location. In any event, the title to the property can not be left dependent upon what complainant may decide to do with it after this litigation terminates. For the record we note too that because of the delay complainant has lost the sale of the property.

For the reason indicated the Cumberland Presbyterian Church or its appropriate agency is entitled to the property. So decree and remand for enforcement. In our discretion and because of the equities favoring defendants all costs are taxed to appellant and surety on the appeal bond.

Cooper and Parrott, JJ., concur.