IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2015 Session


**CHURCH OF GOD IN CHRIST, INC., ET AL. v. L. M. HALEY
MINISTRIES, INC., ET AL.**


**Appeal from the Chancery Court for Fayette County**
**No. 15815     Martha Brasfield, Chancellor**

_____


**No. W2015-00509-COA-R3-CV – Filed January 27, 2016**
_____



A hierarchical church filed a complaint against one of its local churches, seeking an order
establishing the hierarchical church's control over the local church's real and personal
property. The trial court dismissed the complaint on the basis of the doctrine of ecclesiastical
abstention. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which BRANDON O.
GIBSON, J., joined. ARNOLD B. GOLDIN, J.,  filed a dissenting opinion.

Darrell J. O'Neal and JoeDae L. Jenkins, Memphis, Tennessee, for the appellants, Church of
God in Christ, Inc., David A. Hall, Gospel Center Temple Church of God in Christ, and
Gospel Temple Church of God in Christ.

Veronica F. Coleman-Davis, Memphis, Tennessee, for the appellees, L. M. Haley Ministries,
Inc., and Lonnie M. Haley, III.

Robert L.J. Spence, Jr. and Bryan M. Meredith, Memphis, Tennessee, for the appellees,
Gospel Center Temple Moscow, Inc., Jeremiah R. Haley, Ulysses C. Polk, Barry C. Turner,
Milton Holt, Sr., Erskine J. Murphy.


**OPINION**


**Background**

On February 2, 2012, Plaintiffs/Appellants Bishop David A. Hall, individually and on behalf of Gospel Center Temple Church of God in Christ ("Gospel Center COGIC"), filed a complaint for injunction, accounting, and damages against L.M. Haley Ministries, Inc., Gospel Center Temple Church Moscow, Inc. ("Gospel Center, Inc."), and some of its members and trustees, Lonnie M. Haley, III, Jeremiah R. Haley, Ulysses C. Polk, Barry C. Turner, Milton Holt, Sr., and Erskine J. Murphy (collectively with Gospel Center, Inc., "Defendants" or "Appellees"). The initial complaint was amended twice.[1] The second amended complaint ("Second Amended Complaint") is the operative complaint for purposes of this case. The Second Amended Complaint added as additional plaintiffs Church of God in Christ, Inc. ("COGIC"), and "Gospel Center Temple Church of God in Christ, an unincorporated religious organization, by and through its duly appointed Trustee, John Arnett" (collectively with Bishop Hall and Gospel Center COGIC, "Appellants").

It is undisputed that Gospel Center COGIC is a member church of the national not-for-profit religious corporation COGIC, which has churches throughout the United States.[2] Pertinent to this case, COGIC has created and adopted a code of governance referred to as *The Official Manual*.[3] According to Appellants, *The Official Manual* provides rules and protocols for the management of COGIC-affiliated churches. Pursuant to COGIC's governing principles, COGIC churches are organized as part of a hierarchical or connectional system, with various jurisdictional bishops presiding over separate jurisdictions.[4]

The facts in this case are taken largely from the Second Amended Complaint. In 2009, after the death of Gospel Center COGIC's founding pastor, the then-presiding Jurisdictional Bishop for West Tennessee-area COGIC-affiliated churches, J.O. Patterson, installed a speaker rotation system to prevent dissention among those vying to take the place of the deceased pastor. There was no dispute at that time about Bishop Patterson's or

---

[1] Prior to the amendments, Appellees filed a motion to dismiss the complaint, and the parties engaged in discovery, including deposing Bishop Hall.

[2] Specifically, in their answer to the Second Amended Complaint, Appellees admit the allegation that Gospel Center COGIC "is an unincorporated religious organization that is aligned with, and has membership with, [COGIC]."

[3] A full copy of *The Official Manual* is not included in the record. However, the parties do not dispute its contents relative to this case.

[4] This Court has previously held that COGIC operates its local churches as part of a "connectional system." ***Church of God In Christ, Inc. v. Middle City Church of God In Christ***, 774 S.W.2d 950, 951 (Tenn. Ct. App. 1989). "The courts in Tennessee have used the term 'connectional' to mean the same thing as 'hierarchical.'" ***Convention of Protestant Episcopal Church in Diocese of Tennessee v. Rector, Wardens, & Vestrymen of St. Andrew's Par.***, No. M2010-01474-COA-R3CV, 2012 WL 1454846, at *20 n. 16 (Tenn. Ct. App. Apr. 25, 2012). Hierarchical is defined as "of a hierarch," which in turn refers to "a system of church government by priests or other clergy in graded ranks." *Webster's New World College Dictionary* 685 (5th ed. 2014).

COGIC's actions. When Bishop Patterson died in June 2011, however, a new Jurisdictional Bishop for Tennessee was appointed by COGIC, Bishop David A. Hall.

Appellants assert that *The Official Manual* provides that upon his appointment, Bishop Hall had authority to appoint a new pastor for Gospel Center COGIC. According to *The Official Manual*: "The Pastor of the local church shall be appointed by the Jurisdictional Bishop of the Ecclesiastical Jurisdiction of the Church." A later amendment to the rule provides that: "All vacancies that occur in the pastorate of the local church shall be filled by the Jurisdictional Bishop. The jurisdiction and management of the church shall remain with the Jurisdictional Bishop or his designee until such time as a pastor has been appointed to fill such vacancy." Based upon this rule, Bishop Hall appointed himself as interim pastor of Gospel Center COGIC. Thus, Appellants asserted in their complaint that Bishop Hall is the lawful pastor of Gospel Center COGIC, with the right to manage the church and its assets.

Shortly after Bishop Hall appointed himself as interim pastor of Gospel Center COGIC, he took several steps in an effort to manage the church and its assets, including coming to the church property to hold services and attempting to transfer Gospel Center COGIC's bank account into his name. According to Appellants, certain members of Gospel Center COGIC threatened Bishop Hall when he tried to come on the church property and prevented him from obtaining access to the church's liquid assets, which totaled over $150,000.00. To this day, it appears that Bishop Hall has been prevented from accessing church funds or holding any services at Gospel Center COGIC.

Apparently in response to Bishop Hall's efforts to more actively manage Gospel Center COGIC, certain members of the church filed a corporate charter for Gospel Center, Inc. with the Tennessee Secretary of State on December 16, 2011. The complaint further alleges that Defendants Turner, Murphy, and Holt executed and recorded a quit claim deed attempting to transfer Gospel Center COGIC's real property to Gospel Center, Inc. The prior deed to Gospel Center COGIC's real property reflects the grantees as "Temple Church of God in Christ, Ella Mary Cox, Milton E. Holt, Sr., Lonnie M. Haley, Janice Murphy, John W. Arnett and Erskine J. Murphy, Trustees for the use and benefit of Temple Church of God in Christ." The complaint alleged that either deed violated *The Official Manual*, which provides that:

> Real Estate or other property may be acquired by purchase, gift devise, or otherwise, by local churches. Where real or personal property is acquired by deed, the instrument of conveyance shall contain the following clause, to wit;
>
> "The said property is held in trust for the use and benefit of the members of the Church of God in Christ with National

3

Headquarters in Memphis, Shelby County, Tennessee, and subject to the Charter, Constitution, Laws and Doctrines of said Church, now in full effect, or as they may be hereafter amended, changed or modified by the General Assembly of said Church."

Thereafter, certain members of Gospel Center COGIC/Gospel Center, Inc. (hereinafter, collectively, "Gospel Center Church") attempted to call a vote to remove Gospel Center Church from Bishop Hall's jurisdiction (but still remain a part of COGIC). Appellants contend that these church members failed to follow proper protocol in holding the vote[5] and that COGIC consequently rejected their request to transfer and instead informed the members of the proper protocol for holding a vote on transfer. As of this appeal, it does not appear that Gospel Center Church ever received permission to transfer out of Bishop Hall's jurisdiction.

The complaint requested that the court: (1) "order the defendants to remove themselves from control of the church and restore the Church and its property and funds to [Bishop Hall]"; (2) "declare the Quit Claim Deed . . . to be a fraudulent transfer and declare it to be null and void"; (3) "restructure the Deed to the Church real property such as to cause it to properly reflect that title to the real property is held 'in trust for the use and benefit of the members of the Church of God in Christ with National Headquarters in Memphis, Shelby County, Tennessee, and subject to the Charter, Constitution, Laws and Doctrines of said Church, now in full effect, or as they may be hereafter amended, changed or modified by the General Assembly of said Church'"; (4) order the defendants to account for all income and expenditures from January 1, 2011 to the present; and (5) issue a temporary restraining order preventing the defendants from using church funds pending resolution of the case.

On August 21, 2013, Appellees filed an answer to the Second Amended Complaint, denying that Bishop Hall was the lawful pastor of Gospel Center Church. On August 31, 2013, Appellees filed a motion to dismiss the Second Amended Complaint, arguing that the requested relief was barred by the doctrine of ecclesiastical abstention. The Appellees contended that because the dispute involved the matter of whom had authority over Gospel Center Church based upon religious doctrine, the trial court had no subject matter jurisdiction to interfere with the dispute.

Appellants responded in opposition to the motion to dismiss on December 6, 2013. In their response, the Appellants provided evidence regarding ecclesiastic proceedings that had been recently resolved through a judicial arm of the COGIC organization, the Ecclesiastical Council. According to the response, in February 2013, certain members of Gospel Center Church filed a charge against Appellees, alleging that they were violating *The Official*

---

[5] According to Appellants, only those church members that were in favor of the transfer were notified of the vote; those church members that were believed to oppose the transfer were allegedly not informed of the vote and, therefore, did not take part, in violation of COGIC's transfer-vote protocol.

*Manual* in their refusal to acknowledge Bishop Hall as pastor. The COGIC Ecclesiastical Council held a hearing on November 23, 2013. None of the Appellees appeared for the hearing. Accordingly, the COGIC Ecclesiastical Council handed down a decision on November 23, 2013, finding that Appellees "have ignored the requests and admonitions of [Bishop Hall and Presiding Bishop Charles E. Blake] to follow the polity of [COGIC]." The COGIC Ecclesiastical Council further found, *inter alia*, that Appellees were operating Gospel Center Church in violation of *The Official Manual*; that they refused to acknowledge Bishop Hall, their duly appointed Jurisdictional Bishop and pastor; that they caused Bishop Hall to be removed from church premises; that they improperly transferred ownership of church property; and that they improperly called a vote to transfer jurisdictions. Based upon these findings, the Ecclesiastical Council ruled that:

> (a) The Respondents[6] be, and they are hereby, excommunicated as members of the Gospel Center Temple Church of God in Christ and Church of God in Christ, Inc.

> (b) Gospel Center Temple Church of God in Christ shall be reorganized under the Pastoral leadership of Bishop David A. Hall, Sr.

On March 7, 2014, Appellants filed a motion for summary judgment; the motion, however, was not accompanied by a memorandum of law or a statement of undisputed facts. Eventually, on February 18, 2015, the trial court granted Appellees' motion to dismiss. Specifically, the trial court ruled that: (1) it was ruling only on the motion to dismiss; (2) it was considering only the pleadings;[7] (3) Appellants' request for the restructuring of the deed was barred by application of *Church of God in Christ, Inc. vs. Middle City Church of God in Christ*, 774 S.W.2d 950 (Tenn. Ct. App. 1989) (discussed in detail, *infra*); and (4) all other requests for relief "deal[] with ecclesiastical issues" that are outside the subject matter jurisdiction of the courts. Accordingly, the trial court dismissed the complaint in its entirety.

### Issues Presented

Appellants raise two issues for this Court's review, which are taken from their brief:

---

[6] The Respondents were "Gospel Center Temple Church of God in Christ, Jerry E. Murphy, Joyce A. Murphy, Barry C. Turner, Clementine Turner, Barry D. Turner, Milton Holt, Sr., Annie Holt, Elizabeth Houston-Arnett, and Randy Arnett. Thus, only two of the individual Appellees were excommunicated, leaving four individual Appellees as members of COGIC.

[7] The record on appeal reflects that the parties had filed various other materials in support of their respective positions, including the deposition testimony of Bishop Hall, the deeds to the church property, and various affidavits.

5

1.    Whether the trial court erred when it dismissed Appellants' complaint without considering the "neutral principal" approach.

2.    Whether the trial court erred when it dismissed Appellants' complaint without consideration of the Appellants' constitution and governing documents.

As we perceive it, there is one dispositive issue in this case: Whether the trial court correctly granted Appellees' motion to dismiss Appellants' complaint.

## Standard of Review

Here, the trial court granted Appellees' motion to dismiss on the ground that it lacked subject matter jurisdiction over the complaint due to the application of the doctrine of ecclesiastical abstention. *See generally* ***Redwing v. Catholic Bishop for Diocese of Memphis***, 363 S.W.3d 436 (Tenn. 2012) (discussed in more detail, *infra*). When reviewing a motion to dismiss for lack of subject matter jurisdiction, we employ the following standard of review:

> A motion to dismiss for lack of subject matter jurisdiction falls under Tennessee Rule of Civil Procedure 12.02(1). The concept of subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it. *See* ***Meighan v. U.S. Sprint Communications Co.***, 924 S.W.2d 632, 639 (Tenn. 1996); S*tandard Sur. & Casualty Co. v. Sloan*, 180 Tenn. 220, 230, 173 S.W.2d 436, 440 (1943). Subject matter jurisdiction involves the nature of the cause of action and the relief sought, *see* ***Landers v. Jones***, 872 S.W.2d 674, 675 (Tenn. 1994), and can only be conferred on a court by constitutional or legislative act. *See* ***Kane v. Kane***, 547 S.W.2d 559, 560 (Tenn. 1977); ***Computer Shoppe, Inc. v. State***, 780 S.W.2d 729, 734 (Tenn. Ct. App. 1989). Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness. *See* ***Nelson v. Wal–Mart Stores, Inc.***, 8 S.W.3d 625, 628 (Tenn. 1999).

***Northland Ins. Co. v. State***, 33 S.W.3d 727, 729 (Tenn. 2000).

Typically, review of the grant or denial of a motion to dismiss is confined only to the pleadings. Not so, however, of a motion to dismiss for lack of subject matter jurisdiction:

6

> Under different circumstances, [the consideration of documents other than the pleadings] would necessitate treating the motion to dismiss as though it were a motion for summary judgment. A motion to dismiss, however, need not be converted into a motion for summary judgment if a trial court considers external evidence only to determine whether it has subject matter jurisdiction. *Staats v. McKinnon*, 206 S.W.3d 532, 543 (Tenn. Ct. App. 2006).

*Higdon v. State*, 404 S.W.3d 478, 482 (Tenn. Ct. App. 2013). Accordingly, we will consider all the evidence included in the record in determining whether the trial court correctly granted Appellees' motion to dismiss the complaint.

## Discussion

The dispositive issue in this case is whether the doctrine of ecclesiastical abstention bars Appellants' requests for relief. The doctrine of ecclesiastical abstention deprives courts of subject matter jurisdiction to "interfere[e] in the internal affairs of religious bodies." *Anderson v. Watchtower Bible & Tract Soc. of New York, Inc.*, No. M2004-01066-COA-R9CV, 2007 WL 161035, at *1 (Tenn. Ct. App. Jan. 19, 2007). In 2012, the Tennessee Supreme Court exhaustively explained the doctrine and its application in Tennessee courts:

> Our analysis begins with the recognition that religious institutions exist and function in the context of the broader secular community. *See Dobrota v. Free Serbian Orthodox Church St. Nicholas*, 191 Ariz. 120, 952 P.2d 1190, 1195 (Ariz. Ct. App. 1998). The courts do not inhibit the free exercise of religion simply by opening their doors to a suit involving a religious organization. *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. at 449, 89 S.Ct. 601. Thus, the weight of authority recognizes that religious institutions are not above the law, see e.g., *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1244–45 (10th Cir. 2010) (quoting *Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985)), and that, like other societal institutions, they may be amenable to suits involving property rights, torts, and criminal conduct, *see e.g., Dobrota v. Free Serbian Orthodox Church St. Nicholas*, 952 P.2d at 1195; *Thibodeau v. American Baptist Churches of Conn.*, 120 Conn.App. 666, 994 A.2d 212, 219 (2010); *Higgins v. Maher,* 210 Cal.App.3d 1168, 258 Cal.Rptr. 757, 758 (1989);

7

*Tran v. Fiorenza*, 934 S.W.2d 740, 743 (Tex. Ct. App.1996); *see also **Moses v. Diocese of Colo.***, 863 P.2d 310, 320 (Colo. 1993) (indicating that religious institutions do not have "broad immunity against being sued in civil courts").

In civil cases, the ecclesiastical abstention doctrine is implicated only when the alleged improper conduct that gave rise to the lawsuit is "rooted in religious belief." ***Bryce v. Episcopal Church in the Diocese of Colo.***, 289 F.3d 648, 657 (10th Cir. 2002); ***McKelvey v. Pierce***, 173 N.J. 26, 800 A.2d 840, 851 (2002). Adjudication of disputes by state courts is appropriate in matters involving religious institutions, as long as the court can resolve the dispute by applying neutral legal principles and is not required to employ or rely on religious doctrine to adjudicate the matter. *See **Jones v. Wolf***, 443 U.S. at 602–07, 99 S.Ct. 3020; ***New York Annual Conference of United Methodist Church v. Fisher***, 182 Conn. 272, 438 A.2d 62, 68 (1980) (holding that "[i]t is now well established that state judicial intervention is justified when it can be accomplished by resort to neutral principles of law ... that eschew consideration of doctrinal matters such as the ritual and liturgy of worship or the tenets of faith."); ***McKelvey v. Pierce***, 800 A.2d at 856 (holding that the First Amendment does not apply if "the dispute can be resolved by the application of purely neutral principles of law and without impermissible government intrusion (e.g., where the church offers no religious-based justification for its actions and points to no internal governance rights that would actually be affected)"); ***Lacy v. Bassett***, 132 S.W.3d 119, 123 (Tex. Ct. App. 2004) (noting that "a state may adopt an approach, including neutral principles of law, for resolving church disputes that do not involve consideration of doctrinal matters").

***Redwing v. Catholic Bishop for Diocese of Memphis***, 363 S.W.3d 436, 450–51 (Tenn. 2012) (footnotes omitted). The Tennessee Supreme Court cautioned, however, that courts should not apply the doctrine in an overly-broad fashion:

Adopting a more expansive application of the ecclesiastical abstention doctrine runs the risk of placing religious institutions in a preferred position, ***Sanders v. Casa View Baptist Church***, 134 F.3d 331, 336 (5th Cir.1998), and

favoring religious institutions over secular institutions could give rise to Establishment Clause concerns. *See Zanita E. Fenton, Faith in Justice: Fiduciaries, Malpractice & Sexual Abuse by Clergy*, 8 Mich. J. Gender & L. 45, 75 (2001) (noting that "non-application of tort principles where they might otherwise apply may be more like Establishment, creating an exception for religion"). Employing the application of the neutral legal principles approach enables the courts to "give no greater or lesser deference to tortious conduct committed on third parties by religious organizations than we do to tortious conduct committed on third parties by non-religious entities." *Malicki v. Doe*, 814 So.2d 347, 361 (Fla. 2002).

*Redwing*, 363 S.W.3d at 451.

Appellants assert that the only issues in this case concern the ownership of property, a dispute that may be determined without consideration of religious practice and doctrine. Indeed, this Court has held that property disputes in connectional churches may be adjudicated by our courts, so long as the issue may be decided on "'neutral principles of law' equally applicable to church and non-church litigants[.]" *Fairmount Presbyterian Church, Inc. v. Presbytery of Holston of Presbyterian Church of U. S.*, 531 S.W.2d 301, 304 (Tenn. Ct. App. 1975) (quoting *United States et al. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church et al.*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969)). Thus, "the application of the ecclesiastical abstention doctrine has not been extended to 'questions of property or personal rights,'" and "Tennessee courts have permitted adjudications based upon neutral principles." *Convention of Protestant Episcopal Church in Diocese of Tenn. v. Rector, Wardens, & Vestrymen of St. Andrew's Parish*, No. M2010-01474-COA-R3CV, 2012 WL 1454846, at *9 (Tenn. Ct. App. Apr. 25, 2012).

According to Appellants, the trial court erred in declining to decide the issues in this case on the basis of ecclesiastical abstention because other Tennessee courts have previously considered property disputes that required resolution by application of "an organization's constitution." Here, Appellants assert that *The Official Manual* clearly and unambiguously provides that Bishop Hall has control over Gospel Center Church's real and personal property, as the church's pastor. The trial court considered Appellants' arguments with regard to real and personal property individually. Accordingly, we will likewise consider each request for relief in isolation.

**Real Property**

Appellants assert that the Appellees violated *The Official Manual* in failing to hold the real property owned by Gospel Center Church in trust for COGIC. As previously discussed, *The Official Manual* provides that all real property acquired by deed by any COGIC-affiliated church should provide in its deed that the property is held in trust for COGIC. Appellants insist that this document may be considered in determining whether the deed to the real property upon which Gospel Center Church is located should be reformed to provide that it is held in trust for COGIC. In addition, Appellants contend that consideration of *The Official Manual* does not run afoul of the ecclesiastical abstention doctrine. To support this argument, Appellants cite *Convention of Protestant Episcopal Church in Diocese of Tennessee v. Rector, Wardens, & Vestrymen of St. Andrew's Par.*, No. M2010-01474-COA-R3CV, 2012 WL 1454846 (Tenn. Ct. App. Apr. 25, 2012), which they argue supports a holding that the trial court was able to consider COGIC's governing documents in deciding a property dispute.

In *St. Andrews*, "[a]n Episcopal parish in Nashville asserted its intention to disassociate from The Diocese of Tennessee, causing the Diocese to file a declaratory judgment action to determine whether it or the local congregation owned and controlled the real and personal property where the local congregation worshiped." *Id.* at *1. The trial court found that the Episcopal Church is hierarchical and ruled that the local parish's real property was held in trust for the Diocese. On appeal, the local parish argued that the trial court lacked subject matter jurisdiction to decide the issue due to the doctrine of ecclesiastical abstention.

The Court of Appeals disagreed with the local parish and held that the ecclesiastical abstention doctrine was limited to "issues of canon law, religious doctrine, or church governance." *Id.* at *7 (citing *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 710, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976)). In addition, the Court held that simply because the court might be required "to examine religious documents **such as a church constitution for language of a trust**" does not violate the neutral principles approach. *St. Andrew's*, 2012 WL 1454846, at *8 (citing *Jones v. Wolf*, 443 U.S. 595, 604, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979)). Because the dispute in *St. Andrews* involved only the application of an undisputed governing document of the Episcopal Church, the Court of Appeals held that the trial court was not required to abstain from deciding the issue.

The Court then went on to consider whether the Episcopal Church's governing documents required that the parish's real property be held in trust for the Diocese. After considering these documents, as well as the hierarchical nature of the Episcopal Church, the Court held that "property conveyed to a local church which is a part of a connectional church does not remain the property of the local church even when there is no trust language in the deed." *St. Andrew's*, 2012 WL 1454846, at *20 (footnote omitted) (quoting *Church of God In Christ, Inc. v. Middle City Church of God In Christ*, 774 S.W.2d 950, 952 (Tenn. Ct. App. 1989)). Thus, "when a local church acquires real property by deed, it is held in trust for

10

the parent church even in the absence of express trust language." *St. Andrew's*, 2012 WL 1454846, at \*20 (quoting *Middle City*, 774 S.W.2d at 952). Because the church's governing documents clearly established its intent that all church real property owned by local parishes would be held in trust from the Episcopal Church, the Court of Appeals ruled that the parish held the property in trust for the Diocese. *St. Andrew's*, 2012 WL 1454846, at \*20.

Based upon the holding in *St. Andrews*, Appellants argue that this Court should likewise consider the governing documents of COGIC and, based upon their clear requirements, determine that the real property where Gospel Center Church is located should be held in trust for COGIC. An important fact in *St. Andrew's*, however, is that the issue concerned "whether an Episcopalian congregation that decides to break away from The Episcopal Church is able to retain possession over the real property where its congregation worships." *St. Andrew's*, 2012 WL 1454846, at \*13. In this case, however, there is no allegation that Gospel Center Church has made the decision to "break away" from COGIC. Instead, the only action taken by some members of Gospel Center Church was to transfer jurisdictions within COGIC. In addition, while Appellants assert that Gospel Center Church refuses to follow all of COGIC's directives, Appellant does not suggest in its brief that Gospel Center Church's affiliation with COGIC has been terminated.[8]

This Court considered a similar situation in *Church of God In Christ, Inc. v. Middle City Church of God In Christ*, 774 S.W.2d 950 (Tenn. Ct. App. 1989). In *Middle City*, COGIC sued one of its local churches ("the local church") after its trustees executed a deed transferring the real property upon which the local church was located to a religious corporation of a different name. Much like in this case, COGIC argued that the transfer deed

---

[8] Although not mentioned by Appellants in their appellate brief, we note that COGIC's Ecclesiastical Council did vote to excommunicate some members of Gospel Center Church and to reorganize Gospel Center Church under Bishop Hall's leadership. Along with Gospel Center Church, it appears that two of the six individual Appellees in this case were excommunicated by the Ecclesiastical Council. Nothing in Appellants' brief or oral argument to this Court, however, argues that this ruling amounts to a dissociation by COGIC of its affiliation with Gospel Center Church. Indeed, the Second Amended Complaint, which was never amended, specifically states that Gospel Center Church "has membership" with COGIC, and that COGIC continues to consider it a local church for purposes of COGIC's Constitution and *The Official Manual*. In addition, in their memorandum in opposition to Appellees' motion to dismiss, Appellants specifically assert that "[Appellees] in the instant case, being the Local Church and members of its congregation, are without question bound by the orders and judgments of the parent church, COGIC." Clearly this argument is inconsistent with any suggestion that Gospel Center Church was no longer a part of the COGIC organization. Arguments that are not raised and argued in the trial court are waived for purposes of appeal. *See Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009). Arguments that are not set forth in appellate briefs are also deemed waived on appeal. *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) ("An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R.App. P. 27(a)(7)."). Accordingly, any argument that the Ecclesiastical Council's ruling signifies that COGIC terminated its relationship with Gospel Center Church is waived.

11

should be declared null and void due to language in *The Official Manual* requiring that local church real property be held in trust for COGIC. *Id.* at 951. The trial court denied COGIC's request, and this Court affirmed, adopting the trial court's well-reasoned decision in its entirety. *Id.* at 952.

The Court, speaking through the trial court's order, recognized the general rule that "[a] church that is a part of a connectional church holds property in trust for the benefit of the superior organization." *Id.* (citing *Fairmount Presbyterian Church, Inc. v. The Presbytery of Holston of the Presbyterian Church of the U.S.*, 531 S.W.2d 301 (Tenn. Ct. App. 1975); *Cumberland Presbyterian Church v. North Red Bank Cumberland Presbyterian Church*, 430 S.W.2d 879 (Tenn. Ct. App. 1968); *Hardin v. Starnes*, 32 Tenn.App. 66, 221 S.W.2d 824 (Tenn. Ct. App. 1949)). The Court, however, affirmed the trial court's finding that despite the fact that there was "friction between the local church and [COGIC]," "a move of location of the church," and two name changes, "at all times pertinent hereto the local congregation was affiliated with [COGIC]." *Middle City*, 774 S.W.2d at 952. Due to this finding, the Court declined to interfere in the intra-church dispute, explaining:

> On its face this would appear to be a simple matter of property resolution. However, it must be noted that there is no showing of withdrawal by the local congregation. The cases above cited deal primarily with situations in which the local congregation has withdrawn from the connectional system. At that time it was necessary for a court to determine the rights to the property. That is not the case before us. It may well be that there is friction between the local congregation and the connectional system; however, that is not to say that such amounts to withdrawal making it necessary for the Court to become involved in property resolution.

> [COGIC] has not taken the position that there has been a withdrawal by the local church. It obviously does not wish to take such an extreme position as it might be awarded possession of the property. [COGIC] apparently does not seek[] possession of the property, but rather desires a judicial determination that the property is held in trust in accordance with its by-laws.

> The fact that there is a deed from the local trustees to a corporation does not require court intervention. As stated, there has been no showing of a split within the congregation or an attempt to withdraw from the connectional system. Furthermore,

12

it would not appear that the deed is void. *See* T.C.A. 66-2-201 *et seq.*

> In addition there is no need for a judicial determination that the corporate conveyances are impressed with a trust. That determination might be necessary if there was a withdrawal o[r] genuine dispute as to the actual control and ownership of the property. Again, that is not the case before us.

* * *

> There is no need for a judicial determination of property rights where the local church has not withdrawn from the connectional system and there are no genuine property disputes. If the Court grants the relief sought, the result is inescapable. This Court would be judicially establishing as of this time, in accordance with present Tennessee law, the ownership of the church property and parsonage. By impressing a trust for the benefit of the connectional system in light of the disagreements between the local and connectional church, the order in effect would immediately adjudge property rights in [COGIC's] favor implying that the local congregation would forfeit the property if it did not follow the doctrine espoused by [COGIC]. This would have a chilling effect upon the exercise of religious freedom by [the local church]. This Court, an organ of government, cannot do indirectly that which it is forbidden by the Constitution to do directly.

*Id.* at 952–53 (quoting the trial court's ruling). Thus, the Court declined to adjudicate the property dispute on the basis of ecclesiastical abstention where there was no showing that the local church had withdrawn from COGIC. The Court recognized, however, that judicial intervention may be required in the future. *Id.* at 953.

Clearly, the same situation is presented in this case. Here, Appellants do not assert in their brief that COGIC has terminated its affiliation with Gospel Center Church.[9] Indeed, despite the fact that the trial court relied upon *Middle City* to dismiss Appellants' claim to the

---

[9] In our view, it would be inconsistent for Appellants to assert with regard to the real property at issue that Gospel Center Church was no longer affiliated with COGIC, as Appellants assert that their entitlement to Gospel Center Church's personal property is based upon Bishop Hall's appointment as pastor of the church, due to its continued affiliation with COGIC, as discussed *infra*.

real property upon which Gospel Center Church is located, Appellants do not cite *Middle City* in their appellate brief, nor do they attempt to distinguish it from the present case.[10]

---

[10] The dissent makes an eloquent and impassioned argument that the dispute between COGIC and Gospel Center Church, along with the alleged fracture of the Gospel Center Church's congregation and the excommunication of two of the Appellee-parishioners, is sufficient to show a complete breakdown between COGIC and the Gospel Center Church necessitating court intervention in spite of the holding in *Middle City*. This argument, while compelling, was simply not raised or argued by Appellants in their brief to this Court. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup.Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). As previously discussed, Appellants failed to offer any argument to rebut the trial court's finding with regard to the application of the *Middle City* Opinion. While the dissent chooses to construct Appellant's argument for them despite this clear directive from the Tennessee Supreme Court, we will not.

Furthermore, we cannot fully agree with the dissent's application of the *Middle City* Opinion to the facts of this case. The dissent concludes that the case-at-bar is distinguishable from *Middle City* because there has been a "showing of a split within the congregation" as required by *Middle City*. *Middle City*, 774 S.W.2d at 953. To support this conclusion, the dissent points to the fact that two of the named Appellees have been excommunicated from COGIC and that there appears to be a "faction" frustrating COGIC"s interest in the church property. We note, however, that only one case has ever relied on the above language from Middle City: *Avondale Church Of Christ v. Merrill Lynch*, No. E2007-02335-COA-R3-CV, 2008 WL 4853085 (Tenn. Ct. App. Nov. 10, 2008). In *Avondale*, however, the parties to the case were the two opposing factions of the local church, rather than the parent church and local church of a connectional system. *Id.* at *2. Here, no members of the other faction of Gospel Center Church were named as plaintiffs in the Second Amended Complaint. Instead, the only dispute properly before the Court concerns the parent church and the local church. Thus, it appears that there must be a withdrawal from the connectional system in order to necessitate judicial intervention in this specific situation. Moreover, the *Avondale* Court held that the "true impasse" language so heavily relied upon by the dissent was mere dicta. *Id.* at *7. Indeed, our research suggests that other courts considering property rights in a connectional system have done so only after finding a withdrawal from the parent church. *See Emmanuel Churches of Christ v. Foster*, No. M2000-00812-COA-R3CV, 2001 WL 327910, at *2 (Tenn. Ct. App. Apr. 5, 2001) (noting that the local church had voted to withdraw from the parent church); *Fry v. Emmanuel Churches of Christ, Inc.*, 839 S.W.2d 406, 409 (Tenn. Ct. App. 1992) ("While our courts have declined to adjudicate religious matters, they have held that they would intervene in genuine disputes regarding property rights when there has been a withdrawal by a local church."); *St. Andrew's Anglican Catholic Church v. Benemann*, No. 03A01-9105CH00172, 1991 WL 209871, at *4 (Tenn. Ct. App. Oct. 21, 1991) (noting that the relevant caselaw was distinguishable from the present case because "the cited cases are disputes regarding local churches attempting to *withdraw* from the general or connectional church and take certain real property"); *Fairmount Presbyterian Church, Inc. v. Presbytery of Holston of Presbyterian Church of U. S.*, 531 S.W.2d 301, 303 (Tenn. Ct. App. 1975) (involving a local church that withdrew from the parent church); *Cumberland Presbyterian Church v. N. Red Bank Cumberland Presbyterian Church*, 58 Tenn. App. 424, 432, 430 S.W.2d 879, 883 (Tenn. Ct. App. 1968) (focusing on the fact that the local church had voted to withdraw from the parent church in deciding the case).

Because of the doctrine of ecclesiastical abstention, our courts should exercise discretion before interfering in disputes involving churches. Although we should not exercise this discretion so liberally as to refuse to become involved in all disputes, we must be reluctant to interfere in disputes until necessary. Here, the dissent advances an argument that was not expressly raised by the Appellant. Respectfully, formulating an

14

Based upon the unambiguous holding in ***Middle City***, we must decline to interfere with this intra-church dispute over the creation of a trust for COGIC of Gospel Center Church's real property on the basis of ecclesiastical abstention, as there has been no showing that Gospel Center Church has in any way terminated its affiliation with COGIC. The trial court's dismissal of Appellants' request that the court declare the December 2011 deed null and void and to reform the deed to create a trust for the use and benefit of COGIC is, therefore, affirmed.

## Personal Property

As we perceive it, Appellants next contend that the trial court erred in not ordering the Appellees "to remove themselves from control of the church and restore the Church and its property and funds to [Bishop Hall]" and to account for all church income and expenditures occurring after January 2011. Appellants, however, devote little if any of the argument in their appellate brief to this issue. Indeed, at oral argument, counsel for Appellants indicated that "the court probably would not have any authority with regard to personal property." We agree.

From our review of Appellants' argument in the trial court, it appears that Appellants' alleged entitlement to the personal property at issue is predicated on Bishop Hall's allegedly lawful appointment as pastor of Gospel Center Church. Bishop Hall's deposition contains the following exchange:

> Q. Where in the COGIC law, if you could show me, does it say
> that you have the authority over bank accounts?
>
> * * *
>
> A. No, it says that I have supervision and control over the
> church.
>
> Q. Show me where it says that.

---

argument for a party so as to encourage judicial intervention does not strike the appropriate balance required by the doctrine. Moreover, Gospel Center Church has not withdrawn from the connectional system and does not appear to be inclined to do so. COGIC also has not terminated its affiliation with the Church at this juncture. Neither party is without recourse, however, as they are free to terminate their affiliation in the future. Instead, were the course of action urged by the dissent utilized to resolve this case, we would be doing constructively what neither party has chosen to do in actuality. Unless and until that event takes place, this Court has no jurisdiction to interfere in this matter.

A. All right. Where it says, pastor --[11]

Thus, it is clear that Bishop Hall's alleged authority regarding Gospel Center Church's personal property, including its bank accounts, derives from Bishop Hall's alleged place as the lawful leader of the church.

This Court, however, has no subject matter jurisdiction to declare that Bishop Hall is the lawful leader of Gospel Center Church, imbued with all attendant authority. As explained by this Court in *Avondale Church of Christ v. Merrill Lynch*, No. E2007-02335-COA-R3-CV, 2008 WL 4853085 (Tenn. Ct. App. Nov. 10, 2008):

> The issue of who should comprise the leadership of the church, a question significantly broader and more all-encompassing than that of who should control the church property, involves a deeper foray into the thicket of religious belief and church policy than [i]s necessary to resolve the property dispute. "[W]hen our courts have taken jurisdiction over an action arising from an ecclesiastical dispute, they have been careful to decide only the issues dealing with the civil or property right involved using neutral principles of law." *Foster v. Collins*, No. W2004-01959-COA-R3-CV, 2005 WL 3527656, at *6 (Tenn. Ct. App. W.S., filed Dec. 27, 2005) (emphasis added). The Tennessee Supreme Court noted long ago that "[w]hen a civil right depends upon an ecclesiastical matter it is the civil court and not the ecclesiastical which is to decide. But the civil tribunal decides the civil right and no more, taking the ecclesiastical decisions out of which the civil right arises, as it finds them." *Landrith v. Hudgins*, 120 S.W. 783, 807 (Tenn. 1907) (emphasis added).
>
> *   *   *
>
> Our cases make it clear beyond purview that "decisions as to hiring or firing of pastors, as well as other issues regarding minister employment, are protected from court inquiry because such decisions necessarily involve questions of religious practice or governance." *Anderson* [*v. Watchtower Bible & Tract Soc'y of New York, Inc.*, No. M2004-01066-COA-R9-CV,] 2007 WL 161035, at *14 [(Tenn. Ct. App. Jan. 19, 2007)]; *see also* *Mason v. Winstead*, 265 S.W.2d 561, 563 (Tenn. 1954)

---

[11] The book from which the parties are reading does not appear to be in the record on appeal.

16

("the removal of a pastor is an ecclesiastical matter, and the tribunals of the church have exclusive authority in such cases without interference from the civil courts."); *Travers v. Abbey*, 58 S.W. 247 (Tenn. 1900); *Foster*, 2005 WL 3527656, at \*6.

*Avondale*, 2008 WL 4853085, at \*9. Thus, the *Avondale* Court held that it was error for the trial court to enter an order concerning the leadership of the Church.

Here, Bishop Hall's claim to the church's personal property derives solely from his contention that COGIC's governing documents allow him to appoint himself as pastor of Gospel Center Church. To hold that Bishop Hall has authority over Gospel Center Church's personal property, this Court would be required to make a determination as to the appropriate leader of Gospel Center Church. Based upon the holding in *Avondale*, this Court simply has no jurisdiction to determine the proper leader of Gospel Center Church and, consequently, cannot conclude that Bishop Hall's status as pastor entitles him to control over the church's personal property. The judgment of the trial court dismissing Appellants' claims with regard to Gospel Center Church's personal property is, therefore, affirmed.

## Conclusion

The judgment of the Chancery Court of Fayette County is affirmed, and costs of this appeal are taxed to Appellants, Church of God in Christ, Inc., Bishop David A. Hall, individually and on behalf of Gospel Center Temple Church of God in Christ, and Gospel Center Temple Church of God in Christ, an unincorporated religious organization, by and through its duly appointed Trustee, John Arnett, and their surety.

_____
J. STEVEN STAFFORD, JUDGE

17